and Jefferson Insurance Company. Eduardo Mara is here for the appellate. Brian Stack is here for the appellees. And Mr. Mara, you may begin when you're ready. Good morning, Your Honors. May it please the Court. My name is Eduardo Ayala Mara. I represent the appellant, the plaintiff in the case, Mr. Ibaldo Arencibia. This case is about impressions. The court of Arencibia's case is the net impression he obtained when he was faced with Alliance offers of trip protection insurance. And in that context, the district court ruled that Arencibia's net impression of that offer could have never been one that mismatched what the district court ruled. With respect to the net impression issue, I have sort of two questions about that. The first one is I'm not sure that was clearly raised in the district court. There is a reference to a case there, but it seemed like it was in response to another point that was made by your friends on the other side and that it wasn't its own argument. So it's not clear to me that that hasn't been forfeited. But perhaps more importantly, that is the kind of an issue that pertains to the federal law. And I don't know whether it pertains. I'm not sure. Maybe it does. Maybe you can speak to this. But whether it pertains to the state actions that were filed here. Your Honor, we did mention the net impression standard. And we laid it in our initial brief multiple times at every, virtually at every paper in the hearings. And it was mentioned at the oral argument with Judge Blum about 28 times by both parties. And with regards to whether or not it applies, Your Honor, we believe it does in the context of several precedents from this court. For example, in Holtzman's decision, where we're looking at consumer cases. The district court, it is our opinion that it erred when it analogized this $36 consumer transaction to a multifamily, $100 million purchase or a purchase of a golf course contract case. In this case, the very essence of Arancidia's case is that the offer is misleading and he's challenging the contract that he's now being subjected to. Well, let me ask you, the offer expressly stated the terms and conditions and it contained a hyperlink that was fairly conspicuous. What's your response to that? Your Honor, they are labeled terms and conditions. But in substance, they're not terms and conditions. The terms and conditions generally in the insurance process refers to 10 days to file a claim, file an application. The terms and conditions by alliance, if we assume even they're conspicuous and they weren't in hyperlinks, I'll refer more to what the substance of the product is, which is related to medical emergencies and catastrophic events. And that's in contrast in the way that the offer is portrayed, because when they have consumers decline to their offer, they tell them, if I choose not to protect, they insert the price of the flight. Then they tell them, I understand by declining this, I am responsible for all cancellation fees and expenses. A reasonable consumer could have the net impression that if he actually chooses this product, then he's not responsible for cancellation fees and expenses. I'm trying to figure out whether or not it's your argument that he has a contract or not, because in your initial brief, you admit the existence of a contract, but you say the contract was fraudulently induced. But then in the reply brief, you dispute the existence of a contract. Is that because you're convinced by the argument in the Applease brief that you can't have a claim for unjust enrichment if there's a contract concerning the same subject matter? Is that the reason you switched gears in your reply brief? Your Honor, it is not my contention or my opinion that we switched gears. Our complaint doesn't have a breach of contract claim. It at all times challenges the offer and the way it's represented to consumers. So is there a contract or is there not a contract? Our position is there isn't a contract. There isn't a contract. So we should disregard what you said in your initial brief, that there was a contract, but the contract was fraudulently induced. Your Honor, but if the contract was fraudulently induced, the contract is void and it's not valid, that's part of our argument. And that's why we argue in our brief and the lower court was that this should be analyzed from the context of the offer. Did the offer misrepresent? And in answering that, is that we suggest that like-kind cases, like the consumer cases in Holtzman or in Roca Labs, cases that addressed whether the consumer had the net impression different than the actual product are more appropriate for these type of cases. But in any event, there's no unjust enrichment claim that's available to you if there's an express contract concerning the same subject matter. That's Hornbook Florida law, isn't it? Correct, Your Honor. We don't dispute that, but this case challenges the contract and there is some precedent that when the party challenges the contract, an unjust enrichment claim is available to that party. What else is there? Yes, Your Honor, we cited a case in our brief about that. If we had admitted that there is a contract, we wouldn't have unjust enrichment available to us, but I don't see it challenges the contract. There's a declaratory action where we request to the court to declare that the contract is valid based on the misrepresentations in the offer. So you're asserting a breach of contract claim and not an unjust enrichment claim? No, Your Honor, the opposite. We are asserting an unjust enrichment claim and a RICO claim. We don't have a breach of contract cause of action in our complaint. Our contention, Your Honor, is that an unjust enrichment cause of action is viable under the current version of the insurance code. Alliance states that we cannot have an unjust enrichment cause of action because the insurance code forbids it. The reality is that the insurance code explicitly permits common law causes of action when it wrote that the claims or the provisions of the codes are cumulative to other causes of action in Section 6269631. And this court has held in the Pincus case versus American Traffic that whether a statutory remedy is exclusive or is cumulative depends upon the legislative intent as manifested in the language of the statute. Well, let me ask you about Pincus. How can your unjust enrichment claim survive given that he received the coverage that he contracted for? Wouldn't Pincus go against you? The main contention of our insidious complaint is that he did not receive the coverage because it was represented to him that he was being insured for something else, for the purchase price, whereas this product is narrowly related to catastrophic event and medical emergency events. And this is something that in Alliance's offer, which uses a total of 68 English words, the offer has 68 English words, and at no point there is a mention that this is a medical insurance. And this wouldn't have been difficult to disclose. You know, like-kind companies easily disclose what the nature of that product is, and that's why we believe that the unjust enrichment based on this court decision in Silver Star versus State Farm is available to address the inequitableness of this scenario, whether or not they are entitled to retain this benefit when there is a question as to whether that representation was accurate or truthful. And in Florida, there's also precedent for the availability of unjust enrichment even when there is a statute that overlaps the conduct, and I'm referring to the Murthy v. Senior Corporation. In that case, the Florida Supreme Court held that even though the claim was under the negligent qualifying statute, the claimant had a claim for negligence under the common law available. And that case is even more compelling because in that case, the claimant had a statute that had administrative remittance available to him. That's not the case in Silver Star or here. And in fact, here, FEUTA specifically says that your rights are commutative to the common law. Your client thought that the travel insurance policy covered any trip cancellation for any reason, but I can't find anything in this document, this policy, that states that. You know, our contention is that the offer, which states that protects trip cancellation, trip interruption, travel, baggage delay, and more, and which states that if you choose that you will not be responsible for all cancellation fees and expenses, expressly says that. And we argue that this court and the district court should have analyzed the contents of the offer and whether or not a reasonable consumer would have the net impression that the offer was what the product actually ended up being. What if the full terms of the policy were written in that same box, the offer box, with the other words? You don't know. If that would have been the case, Alliance would have a better argument on the idea that . . . What's the difference? I mean, it says right there, terms and policy, details of terms and policy, and there's a link. Why does it matter that it's a link instead of, for graphics reasons or presentation reasons, it didn't put it right in the same box? In the context of consumer transactions, your Honor, courts usually evaluate strongly what the offer actually portrays. This is a $36 purchase, and it cannot be analogized to a complex contract transaction in which consumers will have now to read a 36-page document, which by the way, by the time they actually read that, the offer would have lapsed anyway. Well, that's not necessarily true, is it? I mean, the point here is that your client also had ten days after your client paid for this where he could have read through the contract and canceled it, no penalty to himself. Isn't that right? That is correct, your Honor, but however, most consumers in this context, the event that will trigger the cancellation will happen way after ten days. But even if that's the case, our contention is that Alliance should be required to provide truthful disclosures regardless. So in other words, we cannot have Alliance have misrepresentations of offers as long as there's a cancellation availability. And the impressions consumers are having of this product should have been an issue that under this court's decision in Holtzman was most appropriate for the jury, because in fact, the complaint itself displayed the impressions that other consumers have of this product, and is definitely not one related to medical emergency and catastrophic events. And in that similar context was that the district court dismissed the RICO count, basically on the idea that Arancivia could never have had the net impression that he actually had. And if that would have been available or that Arancivia's claim would have proceeded forward to summary judgment or to a jury trial, he would have been able to do that. Similarly, Your Honor, the Alliance argues that these claims are barred by the McCarran-Ferguson Act, but several courts, including the Supreme Court, have held in humanitarian foresight that the McCarran-Ferguson Act does not impair legislature schemes. And in this case, it's more compelling because the claim here is permitted by the Community Rights Clause of the Utah. And finally, Your Honor, Arancivia did not get a right to amend his complaint. The district court dismissed the complaint in what would have been the first complaint he actually filed against Alliance. When the case went to Texas, Arancivia only amended his complaint as to American Airlines, and Judge O'Connor only addressed that aspect of the case and sent the case back to the district court. The district court dismissed and Arancivia never had an opportunity to amend it as to the Appalachian Alliance. Thank you. We reserve some time, Mr. Marra. Two minutes. We'll hear from Mr. Stack. May it please the Court, Brian Stack on behalf of the Appalachians. The plaintiff's unjust enrichment claim and RICO claims were properly dismissed for multiple independent reasons. First, the court found that all of the claims were predicated on alleged misrepresentations that were irreconcilably inconsistent with the website disclosures and with the terms of the policy, both of which were available to the plaintiff before he purchased the policy, after he purchased the policy, and had a 10-day right to cancel as well. The plaintiff admitted that he had full access to all the terms of the policy before he purchased, and of course he had full access to the terms of the policy after he purchased, and the policy is crystal clear in the first page of the policy coverage page, which says this policy covers only specific situations, events, and losses, and only under the conditions described, and then moreover, not every loss is covered, even if it is due to something sudden, unexpected, or out of your control. He had that, he read it, and he ignored it. What about this, let's see now, the box that you check, it says, there's a box that says yes, protect my trip for a total of $37.06, includes trip cancellation, trip interruption, travel, and baggage delay, and more. An absolutely truthful disclosure on the website, because the policy sold included trip interruption, trip cancellation, and baggage loss coverage, but as the policy points out, and as the website disclosure reveals clearly, that the coverages are all, like all insurance policies, subject to terms, conditions, and exclusions. So there was nothing misleading at all on the website, but even if it was misleading, the law in Florida is that when the terms of the contract ultimately entered into, diametrically contradict those alleged misrepresentations, what governs are the terms of the contract, and that is what not only . . . What if it said, buy this insurance, it covers every conceivable problem you could have, and then there's a hyperlink to the conditions, which show that in fact it doesn't. Are you saying that's something that would not be problematic? It would not be problematic in the context of bringing an unjust enrichment or RICO claim, because the law in Florida says that no matter what those misrepresentations may be pre-contract, if the contract directly and squarely addresses the substance of the alleged misrepresentation, then there is no claim for misrepresentation under Florida law. That's of course not the same thing as under federal law. Well, we're not dealing with federal law, except insofar as there is a RICO claim, but for reasons that were articulated by the district court in the dismissal order, the RICO claim fails as well because there's no misrepresentation whatsoever, not even in the website disclosure and certainly consistent with the policy terms. So that hypothetical . . . What about net impression? Net impressions have nothing to do with this case, because those deal with FTC cases. But counsel argues that the court did not consider his arguments about what was contained in the offer, and that's not correct. The district court looked at what was contained in the so-called offer. That is the website offering to sell a travel insurance policy, coupled with the clear disclosure of terms, conditions, and exclusions. And the court said it was there. The argument that there was a negative net impression was belied by the fact that there was a disclosure statement on the website. So counsel . . . the plaintiff doesn't get out of the box to begin with, because there was no misrepresentation or suggestion of misrepresentation at the very outset. I don't even understand why we're considering whether or not the contract was breached. Isn't he appealing the dismissal of an unjust enrichment count in his complaint? He is appealing the unjust enrichment count, which is barred by the existence of the contract. Then why isn't that a simple resolution of this case? It is an absolutely simple resolution. There is no doubt that under Florida law, the issuance of an insurance policy constitutes a binding contract. The plaintiff seems to want to argue that because he believes that the contract was procured by fraud, that somehow there is no contract. And that is, of course, not the law in Florida. Moreover, he ratified the contract by asserting a claim for benefits under the contract. But beyond all of that, under Florida law, as articulated not only by the Florida Supreme Court, but by this court in the Lemme case and in the Johnson case and the Buell case, the assertion that an insurance contract was procured by fraud does not make that policy of insurance or that contract of insurance unenforceable. To the contrary, the Florida Supreme Court in the Celafonte case, followed by this court in Lemme, and followed by this court in Johnson, and preceded in all of those decisions in the Buell case specifically held that an assertion of unenforceability will not carry the day because if there is no specific statement in the Florida Insurance Code that the violation of one of the regulatory statutes dealing with the sale or advertisement of insurance policies makes that resultant policy unenforceable, then it is enforceable. The problem with the plaintiff's claim ultimately is he entered into a contract, so there is no unjust enrichment claim. He has no unjust enrichment claim because that claim is not recognized under Florida law because there is no private right of action under the Florida Insurance Code. You talked about the RICO a little while ago. Let me come back to that. The district court appeared to follow the law of the case doctrine because she followed Judge O'Connor's reasoning in dismissing the RICO claim. Does this court need to reach the issues of res judicata or claim preclusion? Your Honor, it does not because Judge Bloom below determined that there was no viable misrepresentation claim that would even open the door to a RICO claim. But commenting only briefly on the law of the case argument and res judicata, the RICO claim involved an alleged RICO enterprise involving American Airlines, Jefferson, and AGA. It is the identical claim that was dismissed by the district court judge in Texas. That claim was brought back to Florida and the identical claim was dismissed. The court could, if it would so choose, sustain the dismissal under res judicata or collateral estoppel because it is the identical parties, the identical issues, the identical theory, the identical facts. Nothing has changed. That order in Texas was not appealed, so it became a final order. But the court need not go there because plaintiff can't get through the front door of a RICO claim because there is no viable, under any view of the facts, a viable misrepresentation claim. The problem with the plaintiff's claims ultimately is that he had access to the policy. He admits it. He apparently didn't read the policy. It's the policy language is not confusing. It says in bold letters on page one, this policy does not cover everything. And then it enumerates what it does cover. He elected not to read the policy and then when he elected to voluntarily cancel his flight and was disappointed to learn that he had not purchased the kind of coverage that he imagined that he did, he had no coverage. But that does not create a claim against either AGA or Jefferson. There is no cause of action that he's alleged for unjust enrichment or for a RICO violation. And that is why the district court judge dismissed the claims against American, not because American made misrepresentations but because it was alleged to be part of this overall enterprise and the reasons why the district court judge in Florida also dismissed those claims. So, for all those reasons, we respectfully request the court to affirm the district court's dismissal order. Thank you. Thank you, Mr. Stack. Mr. Marra, you've reserved some time for rebuttal. Mr. Marra, you're appealing the dismissal of an unjust enrichment claim and not the dismissal of a breach of contract claim, right? Your Honor, as I stated earlier, the complaint does not have a breach of contract count. We never had a breach of contract case and we're appealing to the unjust enrichment claim and the dismissal of the RICO count. And the complaint specifically, Your Honor, showed the district court the impression of other consumers. When other consumers are faced with this product, they believe, and I quote, that it's a gigantic scam. So, we had allegations regarding what similarly situated consumers feel about Alliance's offer. When they state that the policy was available pre-purchase, that's simply incorrect. There was no evidentiary hearing regarding this at the district court level. And the only thing . . . I'm sorry. Aren't there in your complaint, and in the attachments, doesn't it show, and I think you allege that it's three clicks away from the box. Isn't that what you allege in the complaint? That the policy is three clicks away from the box? The generic policy, Your Honor. A 32 generic policy, which is not applicable to the circumstances of the actual buyer of this policy. They only get the actual final policy after paying, after they've already clicked to a 36-page document, which is different from that document. So, they allege that that document, that 32-page disclosure, three websites away, is actually an accurate disclosure. When they could have easily, in their 62 words disclosure, say, this is related to medical emergencies. I'm sorry. I'm still a little confused. So, you don't allege that the actual policy is available three clicks from the box? No, Your Honor. We say that a generic policy, one without the consumer's name, one that doesn't apply to this case, the actual final policy is not available until . . . But what are the differences other than the consumer's name? There are several differences. They have, in the second or third page, a section where you can have ten drop-down menu options, where consumers pick their state, the different type of policy. There's a complex array of things for consumers to choose. When they go through that, they could finally, I guess, potentially find something that will match the final policy they actually get after they pay. We don't really know exactly that, but the reality is that counsel's arguments of availability were taken at face value, and there was no determination as to that, because the complaint does allege that there's a complex, burdensome process regarding the access to the actual contents of this policy. And, Your Honor, Judge O'Connor, when the case was transferred in Alliance's petition to Texas, it ordered that the parties brief the case according to Texas law. In that context, what that was that Arancivia amended his complaint as to American Airlines to include counts under Texas law. Nothing was changed as to Alliance. And Judge O'Connor, when he ruled, he specifically stated Arancivia's thing is with Alliance, so he sent the case back to the Southern District of Florida because Alliance didn't have a foreign selection clause like American Airlines had. So, there was nothing for Arancivia to appeal in Texas. There was no ruling as to Alliance. The only time he had a chance to appeal was in the Southern District of Florida, which is what it did here. All right. Thank you, Counselor. Thank you.